1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11

12  STEVE FRED JACQUES,              )   Case No. CV 12-2550-SP
                                     )
13              Plaintiff,           )
                                     )
14       v.                          )   MEMORANDUM OPINION AND
                                     )   ORDER
15                                   )
    CAROLYN W. COLVIN,               )
16  Acting Commissioner of Social Security )
    Administration,                  )
17                                   )
                Defendant.           )
18                                   )
                                     )
19  _____ )

20                          **I.**

21                    **INTRODUCTION**

22          On March 23, 2012, plaintiff Steve Fred Jacques filed a complaint against

23  defendant Michael J. Astrue,[1] seeking a review of a denial of a period of disability

24  and disability insurance benefits ("DIB").  Both plaintiff and defendant have

25  consented to proceed for all purposes before the assigned Magistrate Judge

26  _____

27       [1]   Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, who is now Acting
    Commissioner of Social Security Administration, has been substituted as the
28  defendant.

                              1

pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision:  (1) whether the Administrative Law Judge ("ALJ") properly rejected the opinions of Drs. Stuart A. Green and Russell W. Nelson; and (2) whether the ALJ properly discounted plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 8-18; Memorandum in Support of Defendant's Answer ("Def. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinions of plaintiff's treating and examining physicians without providing specific and legitimate reasons supported by substantial evidence for doing so, and improperly discounted plaintiff's credibility.  Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-eight years old on the date of his August 27, 2010 administrative hearing, has a twelfth grade education.  *See* AR at 17, 23, 32.  His past relevant work includes employment as a semi truck driver and loader and unloader.  *Id.* at 54.

On March 6, 2009, plaintiff applied for DIB, alleging that he had been disabled since July 1, 2000, due to lower back, left shoulder, and right and left hand problems.  *Id.* at 17, 58-60, 70, 128, 133.  Plaintiff's application was denied initially and upon reconsideration, after which he filed a request for a hearing.  *Id.* at 17, 58-60, 70, 76.

2

On August 27, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 31-53. The ALJ also heard testimony from Elizabeth Ramos, a vocational expert. *Id.* at 53-56. On September 23, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 17-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff was not engaged in substantial gainful activity from July 1, 2000, his alleged disability onset date, to December 31, 2005, his date last insured ("DLI"). *Id.* at 19.

At step two, the ALJ found that, through the DLI, plaintiff suffered from severe medically determinable impairments consisting of: status post left shoulder surgery, left shoulder arthritis, lumbar spine arthritis, and cervical spine arthritis. *Id.*

At step three, the ALJ determined that, through the DLI, the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, met or medically equaled the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2] and determined that, through the DLI, he can perform light work with the following limitations:

> [plaintiff] could lift and/or carry 20 pounds occasionally and 10
> pounds frequently, stand and/or walk (with normal breaks) for a total
> of six hours in an eight-hour workday, sit (with normal breaks) for a

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1   total of six hours in an eight-hour workday, could perform postural
2   activities occasionally, could perform pushing and pulling with the
3   right upper extremity occasionally, could not perform overhead
4   reaching with the left upper extremity, and could perform occasional
5   manipulation with the left upper extremity.
6   *Id.* at 19-20 (bold omitted).

7   The ALJ found, at step four, that plaintiff was unable to perform any past
8   relevant work. *Id.* at 23.

9   At step five, based upon plaintiff's RFC, vocational factors and the
10  vocational expert's testimony, the ALJ concluded that "there were jobs that
11  existed in significant numbers in the national economy that [plaintiff] could have
12  performed," including counter clerk, conveyor belt bakery worker and blending
13  tank tender. *Id.* 23-24 (bold omitted). Consequently, the ALJ concluded that
14  plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*
15  at 17, 24.

16  Plaintiff filed a timely request for review of the ALJ's decision, which was
17  denied by the Appeals Council. *Id.* at 1-6, 112. The ALJ's decision stands as the
18  final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

21  This court is empowered to review decisions by the Commissioner to deny
22  benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
23  Administration must be upheld if they are free of legal error and supported by
24  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
25  (as amended). But if the court determines that the ALJ's findings are based on
26  legal error or are not supported by substantial evidence in the record, the court
27  may reject the findings and set aside the decision to deny benefits. *Aukland v.*
28  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

4

1   1144, 1147 (9th Cir. 2001).

2       "Substantial evidence is more than a mere scintilla, but less than a

3   preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

4   "relevant evidence which a reasonable person might accept as adequate to support

5   a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

6   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

7   finding, the reviewing court must review the administrative record as a whole,

8   "weighing both the evidence that supports and the evidence that detracts from the

9   ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

10  affirmed simply by isolating a specific quantum of supporting evidence.'"

11  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

12  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

13  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

14  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

15  1992)).

16                                    **IV.**

17                               **DISCUSSION**

18  **A.    The ALJ Failed to Provide Specific and Legitimate Reasons for**

19          **Rejecting the Opinions of Plaintiff's Treating and Examining**

20          **Physicians**

21       Plaintiff argues that the ALJ improperly rejected the opinions of his treating

22  physician, Dr. Nelson, and his examining physician, Dr. Green.  Pl. Mem. at 8-12.

23  Specifically, plaintiff contends that the ALJ erred when he "failed to accept or

24  reject the opinions of Dr. Nelson" (*id.* at 9), and "failed to discuss . . . pertinent

25  findings of Dr. Green."  *Id.* at 12.  The court agrees.

26       In determining whether a claimant has a medically determinable

27  impairment, among the evidence the ALJ considers is medical evidence.  20

28  C.F.R. § 416.927(b).  In evaluating medical opinions, the regulations distinguish

                                      5

among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.   Dr. Nelson

Dr. Nelson, an orthopedic surgeon with Downey Orthopedic Medical Group ("Downey"), treated plaintiff from at least July 8, 2000 through December 7,

1    2001.[3]  AR at 238-91.  On January 18, 2001, Dr. Nelson examined plaintiff and

2    completed a Primary Treating Physician's Permanent and Stationary Report.  *Id.* at

3    271-77.  Dr. Nelson noted the following objective findings:  status post

4    subacromial debridement and arthroscopic of the glenohumeral joint; significant

5    changes on x-rays of the left shoulder; and severe loss of motion.  *Id.* at 275.  Dr.

6    Nelson diagnosed significant arthritis of the left shoulder and opined that

7    plaintiff's "present left shoulder disability will preclude any type of heavy work

8    with the left arm."  *Id.* at 274-75.  According to Dr. Nelson, plaintiff:  "cannot do

9    any lifting over 20 pounds" and "cannot do any pushing or pulling, and is

10   precluded from all over shoulder work activity with the left arm."  *Id.* at 275.  Dr.

11   Nelson based his opinion on his objective findings, plaintiff's subjective

12   complaints, and a review of plaintiff's medical records.  *Id.* at 271-75.

13        On August 22, 2001, Dr. Nelson further examined plaintiff and found, based

14   on electrodiagnostic testing of plaintiff's upper extremities, that plaintiff

15   exhibited:  median neuropathy at both wrists; possible ulnar neuropathy of the left

16   wrist; and evidence of polyneuropathy of the upper extremities.  *Id.* at 244.  Dr.

17   Nelson opined based on these findings that plaintiff is further restricted from

18   "repetitive gripping and grasping with the left hand," and that "[a]n additional

19   restriction/disability could apply precluding fine manipulation with the left hand."

20   *Id.* at 245.

21        In his decision, although the ALJ cited to some of Dr. Nelson's findings, he

22   effectively ignored Dr. Nelson's opinion concerning plaintiff's work capacity and

23   failed to explain why he omitted some of Dr. Nelson's limitations from plaintiff's

24   RFC.  *Compare id.* at 19-23 *with id.* at 245, 275.  In particular, plaintiff's RFC

25   _____

26        [3]   Plaintiff's medical records from Downey list Dr. Nelson as plaintiff's
     primary treating physician through at least December 24, 2003.  AR at 200-37.
27   But there is no indication in the record that Dr. Nelson treated plaintiff after
     December 7, 2001.  *See id.*
28

1   does not reflect Dr. Nelson's determination that plaintiff is restricted from pushing

2   and/or pulling with the left arm. *Compare id.* at 19-20 *with id.* at 275. The ALJ's

3   failure to include the left arm push/pull restriction opined by Dr. Nelson in

4   plaintiff's RFC constitutes an implicit rejection of Dr. Nelson's opinion.

5   *See Smolen*, 80 F.3d at 1286 ("By disregarding [plaintiff's treating physicians']

6   opinions and making contrary findings, [the ALJ] effectively rejected them."). But

7   the ALJ failed to provide any reason, let alone a specific and legitimate one, for

8   rejecting Dr. Nelson's finding. *See*, *generally*, AR at 17-24. Indeed, he did not

9   even acknowledge he was rejecting any portion of Dr. Nelson's findings.

10  Accordingly, the ALJ erred in rejecting Dr. Nelson's opinion. *See Lester*, 81 F.3d

11  at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the

12  Commissioner may not reject this opinion without providing 'specific and

13  legitimate reasons' supported by substantial evidence in the record for so doing.")

14  (internal quotation marks and citation omitted).

15          Moreover, the court finds unpersuasive defendant's claim that any error by

16  the ALJ in failing to adopt Dr. Nelson's left arm push/pull limitation would be

17  harmless because only one job relied upon by the ALJ at step five requires

18  pushing/pulling and there is no indication that it requires pushing/pulling

19  bilaterally. *See* Def. Mem. at 4. Defendant apparently relies on the *Dictionary of*

20  *Occupational Titles's* ("DICOT") short opening paragraph describing the duties

21  for each the three occupations at issue. *See* DICOT 249.366-010; DICOT

22  524.687-022; DICOT 520.687-066. Yet, while the duties of bakery worker and

23  counter clerk do not explicitly include pushing and/or pulling, these activities may

24  be implicit in the other tasks listed. *See id.* Indeed, all three jobs are classified as

25  "light work," which may include "pushing and pulling of arm or leg controls." 20

26  C.F.R. §§ 404.1567(b) & 416.967(b). Neither the DICOT nor the relevant

27  regulations indicate whether the push/pull requirement may be satisfied with one

28  hand (*see, generally, id.*; DICOT 249.366-010; DICOT 524.687-022; DICOT

1   520.687-066), and the vocational expert did not testify concerning the push/pull

2   requirements of the jobs in question. *See, generally,* AR at 53-56. In sum, the

3   court does not find the ALJ's error was harmless.

4          The ALJ arguably also failed to adopt Dr. Nelson's limitation against

5   repetitive gripping or grasping with the left hand. *Compare id.* at 19-20 *with id.* at

6   245. The ALJ's failure to adopt Dr. Nelson's left hand repetitive

7   gripping/grasping restriction is arguable because the ALJ limited plaintiff to

8   occasional manipulation with the left upper extremity. *See id.* at 20. If "frequent"

9   is the same as "repetitive", and therefore less than frequent, i.e., occasional, is the

10  same as less than repetitive, then there is no conflict between the RFC (occasional

11  manipulation) and Dr. Nelson's opinion (no repetitive gripping/grasping). But the

12  Ninth Circuit has suggested (in dictum) that "frequent" and "repetitive" are not the

13  same, and that a job could require repetitive activity occasionally. *See Gardner v.*

14  *Astrue*, 257 Fed. Appx. 28, 30 & n. 5 (9th Cir. 2007) (discussing differences

15  between frequent and repetitive activity). Under *Gardner*, a limitation to

16  occasional manipulation on the left, as included in the ALJ's RFC, may not

17  account for Dr. Nelson's limitation to no repetitive gripping and grasping on the

18  left. *See id.* The court need not resolve this issue in light of its conclusion that the

19  ALJ's error in failing to adopt Dr. Nelson's left arm push/pull limitation was not

20  harmless. *See supra.* On remand, however, the ALJ shall clarify that his RFC is

21  consistent with Dr. Nelson's preclusion from left hand repetitive gripping or

22  grasping.

23         In addition, Dr. Nelson opined that "[a]n additional restriction/disability

24  could apply *precluding* fine manipulation with the left hand[,]" AR at 245

25  (emphasis added), whereas the ALJ limited plaintiff to "*occasional* manipulation

26  with the left upper extremity." (*Id.* at 20) (emphasis added). While Dr. Nelson's

27  fine manipulation restriction was ambiguous (*see id.* at 245) (stating only that such

28  a restriction "could" apply), the ALJ had a duty to develop the record to allow for

proper evaluation of Dr. Nelson's opinion.  *See Tonapetyan*, 242 F.3d at 1150

("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to

allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an

appropriate inquiry.") (internal quotation marks and citations omitted).  In this

case, however, any error by the ALJ in failing to develop the record concerning

Dr. Nelson's left hand fine manipulation restriction was likely harmless given the

vocational expert's testimony that two out of the three jobs relied upon by the ALJ

at step five require no fingering.  *See* AR at 55.  Nonetheless, on remand the ALJ

shall ensure that the record is fully developed to allow for proper evaluation of Dr.

Nelson's opinion concerning plaintiff's fine manipulation limitations.

Finally, plaintiff also claims that the ALJ also erred in precluding overhead

reaching with the left upper extremity, but in not precluding work *above shoulder*,

consistent with the opinion of Dr. Nelson.  *See* Pl. Mem. at 9-11; Reply at 5;

*compare* AR at 19-20 *with* AR at 275.  But plaintiff did not cite to any authority

supporting plaintiff's distinction between work above shoulder and work

overhead, and this court is not aware of any such authority.  *See, generally,* Pl.

Mem. at 9-11; Reply at 3-5.  Thus, the court finds no error by the ALJ in this

respect.

### 2.   Dr. Green

On September 13, 2002, Dr. Green examined plaintiff on behalf of the

California workers' compensation system.  AR at 379-416.  Based on objective

testing, plaintiff's subjective complaints, and a review of plaintiff's medical

records, Dr. Green found:  constant and minimal left shoulder pain; slight left

shoulder pain with activities of daily living; slight-to-moderate left shoulder pain

with light lifting, pushing/pulling/torquing against light resistance, and/or

attempted work above chest level; moderate left shoulder pain with further effort;

pain radiating up into the neck and down into the low back from the left shoulder;

absence of substantial part of the acromion process to palpation and on x-ray;

1   downward drooping of entire left shoulder complex; surgical scar over left

2   shoulder; and radiographic evidence of gleno-humeral joint narrowing and

3   osteophyte formation.  *Id.* at 413.  Dr. Green limited plaintiff to:  light lifting, and

4   pushing/pulling/torquing against light resistance; no repetitive strong gripping and

5   grasping; and no work above shoulder level.  *Id.* at 413-14.

6        While the ALJ stated that he "generally adopt[ed] Dr. Green's opinion" (*id.*

7   at 22), the ALJ failed to explain why he omitted some of Dr. Green's limitations

8   from plaintiff's RFC.  *Compare id.* at 19-23 *with id.* at 413-14.  For example,

9   plaintiff's RFC does not reflect Dr. Green's determination that plaintiff "is

10  precluded from repetitive strong gripping and grasping."  *Id.* at 414.  As

11  previously discussed with respect to Dr. Nelson, the ALJ's failure to adopt Dr.

12  Green's limitation was an implicit rejection of this opinion, and his failure to

13  provide any reason for doing so was legal error.  *See Smolen*, 80 F.3d at 1286.  But

14  again, it is arguable whether the ALJ's error in failing to adopt Dr. Green's

15  preclusion from "repetitive" strong gripping and grasping (AR at 414) is harmless

16  given that none of the jobs relied upon by the ALJ at step five require "frequent"

17  handling.  *See id.* at 55.  Once again, although the court will not resolve this issue

18  given the alternative grounds for reversal of the ALJ's decision, the parties may

19  wish to clarify this matter on remand.

20       In addition, although Dr. Green precluded all "work[] above shoulder level"

21  (*id*. at 414), the ALJ found only that plaintiff "could not perform overhead

22  reaching with the *left* upper extremity."  *Id.* at 20 (emphasis added).  But any error

23  by the ALJ in failing to adopt Dr. Green's preclusion against all above shoulder

24  level work appears to have been harmless given the vocational expert's testimony

25  that two out of the three jobs relied upon by the ALJ at step five require no

26  overhead reaching.  *See AR* at 56.  The court again notes this is a matter the

27  parties may wish to address on remand.

28       Plaintiff also argues that the ALJ erred in failing to include Dr. Green's

1  opinion that plaintiff cannot sit longer than 20 minutes, and stand/walk longer than

2  ten minutes.  *See* Pl. Mem. at 12.  But the court agrees with defendant that Dr.

3  Green did not find these limitations; rather, they simply constituted plaintiff's

4  subjective complaints.  *See* AR at 367.

5      In sum, the ALJ failed to properly evaluate the opinions of Drs. Nelson and

6  Green.

7  **B.**   **The ALJ Failed to Provide Clear and Convincing Reasons for**

8      **Discounting Plaintiff's Subjective Complaints**

9      Plaintiff argues that the ALJ failed to make a proper credibility

10  determination.  Pl. Mem. at 13-17.  Specifically, plaintiff contends that the ALJ

11  did not provide clear and convincing reasons that are supported by substantial

12  evidence for discounting plaintiff's subjective pain testimony.  *Id.*  This court

13  agrees.

14      An ALJ must make specific credibility findings, supported by the record.

15  Social Security Ruling ("SSR") 96-7p.[4]  To determine whether testimony

16  concerning symptoms is credible, an ALJ engages in a two-step analysis.

17  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36  (9th Cir. 2007).  First, an ALJ

18  must determine whether a claimant produced objective medical evidence of an

19  underlying impairment "'which could reasonably be expected to produce the pain

20  or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

21  341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

22  malingering, an "ALJ can reject the claimant's testimony about the severity of her

23  _____

24      [4]  "The Commissioner issues Social Security Rulings to clarify the Act's
   implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the [Social Security Administration].  SSRs do not have the force

26  of law.  However, because they represent the Commissioner's interpretation of the
   agency's regulations, we give them some deference.  We will not defer to SSRs if

27  they are inconsistent with the statute or regulations."  *Holohan*, 246 F.3d at 1203

28  n.1 (internal citations omitted).

1  symptoms only by offering specific, clear and convincing reasons for doing so."

2  *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

3  2003). An ALJ may consider several factors in weighing a claimant's credibility,

4  including: (1) ordinary techniques of credibility evaluation such as a claimant's

5  reputation for lying; (2) the failure to seek treatment or follow a prescribed course

6  of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d

7  1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

8     In his decision, the ALJ found plaintiff's "medically determinable

9  impairments could reasonably be expected to cause the alleged symptoms" (AR at

10  20), which "satisfie[s] the first [step] of the ALJ's inquiry regarding the credibility

11  of [plaintiff]'s complaints." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

12  At the second step, because the ALJ did not find any evidence of malingering (*see,*

13  *generally,* AR at 19-23), the ALJ was required to provide clear and convincing

14  reasons for discounting plaintiff's credibility. *See Benton*, 331 F.3d at 1040.

15     Here, the ALJ found that plaintiff's statements regarding his symptoms and

16  limitations were "not credible to the extent they are inconsistent with the . . .

17  assess[ed] [RFC.]" AR at 20. The ALJ provided four reasons for discounting

18  plaintiff's credibility: (1) plaintiff's daily activities are "fairly normal"; (2)

19  plaintiff's prescribed medications were effective in alleviating his pain "to some

20  extent"; (3) plaintiff attended school to train for a new career in jewelry; and (4)

21  there is a lack of objective medical evidence concerning plaintiff's back and neck

22  impairments, especially plaintiff's back dysfunction prior to December 2005. *Id.*

23  at 22-23. The ALJ's reasons were not clear and convincing reasons supported by

24  substantial evidence.

25     First, the ALJ noted that plaintiff's daily activities are "fairly normal." *Id.* at

26  22. The ALJ may properly consider inconsistencies between plaintiff's pain

27  allegations and his daily activities. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59

28  (9th Cir. 2002). But the ALJ's finding that plaintiff's daily activities are "fairly

1  normal" misstates the record and is not supported by substantial evidence. *See*

2  *Lingenfelter*, 504 F.3d at 1036 (reasons for discrediting plaintiff that

3  mischaracterize the record "provide[] no support for the [ALJ's] credibility

4  finding[]"). The ALJ noted that plaintiff could water the lawn, clean up after his

5  dog, vacuum one room each day, shop (with a cane), wash dishes, and help with

6  cooking. *See* AR at 20. Yet, the ALJ failed entirely to discuss Dr. Green's report

7  noting plaintiff's complaints of difficulty with standing, sitting, walking, reclining,

8  ascending and descending stairs, bowel movements, brushing his teeth, combing

9  his hair, bathing, dressing, eating, lifting, grasping, tactile discrimination, writing,

10 hearing and driving. *See id.* at 367. Moreover, the ALJ ignored Dr. Green's note

11 that plaintiff reported sleeping only three to four hours per night due to pain. *See*

12 *id.*; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred in

13 discrediting plaintiff's pain testimony based on daily activities that were "quite

14 limited and carried out with difficulty[]").

15        In any event, plaintiff's reported daily activities are not inconsistent with

16 plaintiff's claim of disabling impairments. *See Orn v. Astrue*, 495 F.3d 625, 639

17 (9th Cir. 2007) (the mere fact that plaintiff has carried on certain daily activities is

18 not a clear and convincing reason for discrediting his testimony); *Fair v. Bowen*,

19 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily

20 transferable to what may be the more grueling environment of the workplace,

21 where it might be impossible to periodically rest or take medication."); *see also*

22 *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001)  (plaintiff's ability to

23 go grocery shopping with assistance, walk approximately an hour in the mall, get

24 together with friends, play cards, swim, watch television, read, take physical

25 therapy, and exercise at home did not constitute a clear and convincing reason for

26 rejecting her pain testimony). Here, "there is neither evidence to support that

27 [plaintiff]'s activities were 'transferable' to a work setting nor proof that [plaintiff]

28 spent a 'substantial' part of his day engaged in transferable skills." *Orn*, 495 F.3d

1   at 639; *see, generally,* AR at 22-23.   Accordingly, the ALJ erred to the extent he

2   rejected plaintiff's testimony based on his daily activities.  *See Orn*, 495 F.3d at

3   639 ("The ALJ must make 'specific findings relating to [the daily] activities' and

4   their transferability to conclude that a claimant's daily activities warrant an adverse

5   credibility determination.").

6        Second, the ALJ noted that plaintiff's prescribed medications were effective

7   in alleviating his pain "to some extent." AR at 22.  The ALJ may properly

8   discredit plaintiff's pain allegations when the evidence shows that his pain is

9   controllable by medication.  *See Morgan*, 169 F.3d at 599 (ALJ's adverse

10  credibility determination properly accounted for physician's report of improvement

11  with medication).  Moreover, the ALJ correctly noted that plaintiff testified that

12  the pain medication was effective in alleviating his pain "to some extent." AR at

13  22, 39.  But plaintiff's testimony that the pain medication "helps for a while," i.e.,

14  "maybe . . . a few hours," and does not eliminate the pain but only reduces it (*id.* at

15  39), was not a clear and convincing reason to reject his testimony in this case.

16  Despite pain medication treatment that provided some relief for "maybe . . . a few

17  hours" at a time, plaintiff continued to experience significant pain such that his

18  treating physician, Dr. Simon Lavi, concluded that plaintiff "failed all

19  conservative measures, . . . includ[ing] activity modification, physical therapy and

20  pain management" (*id.* at 424), and recommended back surgery to treat plaintiff's

21  symptoms.  *Id.* at 424, 429; *see also id.* at 376 (Dr. Green concluded for the

22  purposes of plaintiff's worker's compensation claims that plaintiff "is reasonably

23  entitled to the surgery being proposed by Dr. Lavi.").[5]  Moreover, even if pain

24  management treatment was effective in addressing plaintiff's pain, Dr. Lavi

25

26  _____

27       [5]   Plaintiff testified at the hearing that he had not undergone the recommended
    surgery because it was denied by plaintiff's health insurance.  *See* AR at 40; *see*
28  *also id.* at 366.

instructed plaintiff that his pain medications "are not to be taken during the course of employment or while operating any sort of machinery." *Id.* at 441; *see Erickson*, 9 F.3d at 817-18 (in determining a claimant's limitations, the ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication). Accordingly, the ALJ erred to the extent he rejected plaintiff's testimony because his medications were effective in alleviating his pain.

Third, the ALJ noted that plaintiff attended school to train for a new career in jewelry. AR at 22. As previously noted, while the ALJ may properly consider inconsistencies between plaintiff's pain allegations and his daily activities (*see Thomas*, 278 F.3d at 958-59), the mere fact that plaintiff has carried on certain activities is not a clear and convincing reason for discrediting his testimony. *Orn*, 495 F.3d at 639. Again, here "there is neither evidence to support that [plaintiff]'s activities [while attending school] were 'transferable' to a work setting nor proof that [plaintiff] spent a 'substantial' part of his day engaged in transferable skills." *Id.* To the contrary, plaintiff testified that he was able to attend jewelry classes because "if [he] w[as] hurt they allow[ed] [him] to get up, walk around, sit in different areas, walk – [he] w[as]n't always in one position." AR at 50. Plaintiff further testified that "[he] do[es]n't think [he could work in the jewelry industry] . . . because of [his] pain and at a jewelry store . . . they have you on assembly like and . . . you're not as free, as free to go as you were at school." *Id.* at 51. In sum, the ALJ erred to the extent he rejected plaintiff's pain allegations because plaintiff attended school to train for a new career in jewelry.

Finally, the ALJ noted that there is a lack of objective medical evidence concerning plaintiff's back and neck impairments, especially plaintiff's back dysfunction prior to December 2005. *Id.* at 22. But the medical evidence of record documents the following evidence of plaintiff's back and neck

impairments:  (1) physical examinations of plaintiff's lumbar and cervical spines consistently yielded abnormal results, including pain on palpation, restricted range of motion, spasm and/or dysesthesia (*see, e.g., id.* at 201, 205, 209, 221, 225, 257, 374-75, 420, 424, 427, 435-36, 460, 524, 530, 534, 538, 541, 588 (lumbar spine); 182, 201, 221, 225, 233, 257, 261, 288, 440, 460, 524, 529 (cervical spine)); (2) abnormal lumbar and cervical Magnetic Resonance Imaging ("MRI") results in 2006 (*id.* at 300, 302); (3) positive discogram at L2-3 and L5 levels in 2008 (*id.* at 355-57); (4) treatment with three epidural injections in plaintiff's lumbar spine in 2008 (*id.* at 355, 358, 360); and (5) finding by both plaintiff's treating and examining physicians that plaintiff is a candidate for back surgery in 2008, (*id.* at 376, 424, 429).  Moreover, the record documents plaintiff's back impairments before December 2005, including:  July 1999 diagnosis of chronic hyperflexion/hyperextension/deceleration injury of cervical spine based on, inter alia, physical examination of plaintiff's cervical spine revealing trapezial spasm and tenderness, and cervical x-ray showing narrowing of C5-6 disc space and reversal of cervical angulation secondary to muscle spasm (*id.* at 182, 186-87); July 1999 diagnosis of chronic lumbosacral sprain and strain based on, inter alia, physical examination of plaintiff's lumbar spine revealing paravertebral spasm and tenderness, and lumbar x-ray showing osteophytes of the L3 lumbar vertebra (*id.* at 184, 186-87); and consistent diagnoses in 2001-03 of disc injuries/Spondylosis, C5-6 and C6-7, and lumbosacral strain/spondylosis based on, inter alia, abnormal physical examination findings of plaintiff's cervical and lumbar spines, including pain on palpation, restricted range of motion, and spasm (*id.* at 201-02, 205, 209-10, 221, 225-26, 233, 236, 252, 257, 261, 266).  It is unclear how the above objective findings do not support plaintiff's claims.  In sum, the ALJ's reason is not supported by substantial evidence.

In any event, since the ALJ failed to provide any other legally sufficient

reason to discredit plaintiff, the ALJ erred to the extent he rejected the severity of plaintiff's alleged limitations based on a lack of objective medical evidence. *See* AR. at 22-23. The ALJ concluded that plaintiff presented sufficient medical evidence of an underlying impairment that "could reasonably be expected to cause the alleged symptoms." *See id.* at 20. As such, the ALJ may not discredit plaintiff's testimony "solely because the degree of pain [he] alleged . . . is not supported by objective medical evidence." *Bunnell*, 947 F.2d at 347; *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In short, the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate the opinions of Drs. Nelson and Green, and at least to some extent the ALJ's error in these evaluations was not harmless, and because the ALJ also erred in discounting plaintiff's credibility. On remand, the ALJ shall: (1)

1  reconsider the opinions provided by Drs. Nelson and Green, and either credit their

2  opinions or provide adequate reasons under the appropriate legal standard for

3  rejecting any portion of their opinions; and (2) reconsider plaintiff's subjective

4  complaints, and either credit plaintiff's testimony or provide clear and convincing

5  reasons supported by substantial evidence for rejecting it.  The ALJ shall then

6  assess plaintiff's RFC and proceed through steps four and five to determine what

7  work, if any, plaintiff is capable of performing.

8  **VI.**

9  **CONCLUSION**

10      IT IS THEREFORE ORDERED that Judgment shall be entered

11  REVERSING the decision of the Commissioner denying benefits, and

12  REMANDING the matter to the Commissioner for further administrative action

13  consistent with this decision.

14

15  DATED: February 25, 2013

16

17  SHERI PYM
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28